IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| RELO FRANCHISE SERVICES, INC., | : | Case No. 1:18-cv-578 |
| | : | |
| Plaintiff, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | **ORDER ADOPTING REPORT AND** |
| | : | **RECOMMENDATION** |
| CONNOR GILMAN, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

This matter is before the Court on Defendants' Objections (Doc. 48) to the Magistrate Judge's Report and Recommendation (Doc. 33) that Plaintiff's Motion for Preliminary Injunction (Doc. 7) be granted. Plaintiff opposes Defendants' Objections (Doc. 51). For the reasons set forth below, the Defendants' Objections will be overruled, and the Magistrate Judge's Report and Recommendation will be adopted.

**I.    BACKGROUND**

**A. Facts**

The Magistrate Judge provided an excellent recitation of the facts in her Report and Recommendation (Doc. 33). The Court will summarize those facts here for ease of analysis.

Plaintiff Relo Franchise Services, Inc. ("RFS") is a commercial real estate relocation consulting and project management business headquartered in Ohio. On April 24, 2015, Defendants Connor Gilman, Charlene Gilman, and Incline Holdings, Inc. ("Incline")[1] entered into a Franchise Agreement with RFS in which Defendants agreed to own and operate a Relocation Strategies, Inc. franchise in Denver, Colorado for a period of 10 years. In addition to

---

[1] Connor and Charlene Gilman created Incline for the sole purpose of purchasing the franchise license from RFS. (Hrg. Tr., Doc. 43 at PageID 1249.)

1

requiring Defendants to pay royalty fees, the Agreement contains non-compete and non-solicitation clauses, as well as a non-disclosure requirement for confidential information.

In exchange for "valuable specialized training and confidential information," Defendants agreed not to:

> "directly or indirectly . . . (c) Own, maintain, engage in, or have any interest in any business offering commercial relocation services or other services which are offered in the franchised business . . .or (d) Sell or perform for compensation any Permitted Products and Services, or otherwise operate the franchised business, within a franchise territory licensed to another franchisee . . . or otherwise infringe upon rights granted under franchise agreements with other franchisees."

(Franchise Agreement, Doc. 6 at PageID 202–203.) Defendants also agreed "during the term of this Agreement or thereafter" not to "communicate, divulge, or use for the benefit of any other person, persons, partnership, association or corporation, any confidential information, knowledge, or know-how concerning the system or the methods of operation hereunder." (*Id.* at PageID 194.)

Upon termination or expiration of the Franchise Agreement, Defendants agreed, among other things, not to "directly or indirectly, represent to the public or hold itself out as a present or former franchisee of Franchisor." (*Id.* at PageID 201.) Section 15.3 of the Franchise Agreement contains a covenant-not-to-compete that continues for one year after the termination or cancellation of the agreement. (*Id.* at PageID 203.)

Defendants specifically acknowledged that violation of the Agreement "will cause Franchisor irreparable injury, and Franchisee consents to the issuance of, and agrees to pay all court costs and reasonable attorneys' fees incurred by Franchisor in obtaining . . . any injunction against a violation." (*Id.* at PageID 194 (as to use of confidential information) and PageID 203 (as to covenants-not-to-compete during and after termination of the Franchise Agreement).) The

"Enforcement" clause contained in § 16.1 again reiterates RFS's entitlement to injunctive relief. (*Id.* at PageID 204.)

In 2015, the Gilmans earned very little income from the new franchise, and they were disappointed in the training and level of support they received from RFS. However, they continued to operate the franchise, and profits grew. They hired additional employees in 2016, 2017, and 2018, as their business expanded. By the end of 2017, the Gilman's franchise had become the most profitable RFS franchise in the country.

In May 2018, the Gilmans formed a new company, Pivotal Project Management, Inc. ("Pivotal"), because "we were offering a level of services that the franchisor did not support, so we made the business decision to break away from the franchisor." (Ch. Gilman Dep., Doc. 24 at PageID 926.) Pivotal employs all of the former franchise employees, who hold the same titles at Pivotal that they previously held at the franchise. Defendants sent notice of their new business name to multiple industry contacts, announcing that they were "rebranding" the prior franchise. Pivotal has three customers, all of whom are prior customers of their former franchise.

On July 30, 2018, the Gilmans advised RFS that they were terminating the operation of the franchise in order to work for Pivotal, their new commercial real estate project management company. On August 2, 2018, RFS notified Defendants that they were in breach of the Franchise Agreement.

**B. Procedural Posture**

Plaintiff RFS initiated this action in the Court of Common Pleas in Hamilton County, Ohio, alleging in part that the Defendants breached their Franchise Agreement by abandoning their franchise and starting a competing business, Pivotal. Defendants removed this matter to United States District Court for the Southern District of Ohio based on diversity of citizenship,

pursuant to 28 U.S.C. §§ 1441 and 1332.  This Court's jurisdiction is undisputed, and all pretrial proceedings in this matter were referred to the Magistrate Judge (Doc. 5).

Plaintiff RFS filed a Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 7) which Defendants opposed (Doc. 21).  The parties reached an agreed injunction that resolved the need for a temporary restraining order (Doc. 11), but the Motion for Preliminary Injunction remained unresolved.  Pursuant to the Court's referral order, the Magistrate Judge conducted an evidentiary hearing and issued a Report and Recommendation (Doc. 33) that Plaintiff's Motion for a Preliminary Injunction be granted subject to "the appropriately narrow scope of the recommended injunction."  (Doc. 33 at PageID 1063.)

Defendants filed Objections to the Report and Recommendation, alleging that the Magistrate Judge erred in concluding that RFS had a substantial likelihood of success on the merits because she failed to properly consider Defendants' defenses to enforcement of the Franchise Agreement.  Plaintiff responded that the Defendants' alleged defenses to enforcement were waived and/or are not supported by the facts of this case.  Thus, according to Plaintiff RFS, the Magistrate Judge correctly concluded that it has a substantial likelihood of success on the merits, and the Court should adopt the Report and Recommendation.  For the reasons set forth below, the Court agrees.

**II.     STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 72(b)(3), "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The District judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."

## III. ANALYSIS

The standards guiding a preliminary injunction motion are well established:

> Four factors guide the decision to grant a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012). We have often cautioned that these are factors to be balanced, not prerequisites to be met. *Certified Restoration*, 511 F.3d at 542. At the same time, however, we have also held that "[a] preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed[.]" *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010) (bracketing omitted) (quoting *Mich. State AFL–CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997)).

*S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017). In the case at bar, Defendants contend that the Magistrate Judge incorrectly determined that Plaintiff had a strong or substantial likelihood of success on the merits because she failed to appropriately consider Defendants' defenses to enforcement of the Franchise Agreement. The Court will address each alleged defense to enforcement below.

### A. Defendants' Claim that the Ohio Business Opportunity Act Renders the Franchise Agreement Unenforceable

Defendants allege that the Ohio Business Opportunity Act ("OBOA") renders the Franchise Agreement unenforceable. RFS responds that Defendants waived any OBOA argument because they failed to present it to the Magistrate Judge in this case.[2] In addition, RFS

---

[2] The Defendants have expanded the OBOA and fraudulent inducement arguments quite dramatically on appeal to this Court, although they made mention of related arguments to the Magistrate Judge. In her Report and Recommendation, the Magistrate Judge states, "Specifically, Defendants argue that: . . . (2) Ohio's Business Opportunities Act and/or the doctrine of fraudulent inducement make the entire Franchise Agreement cancellable or void." (Doc. 33 at PageID 1072.) This Court concludes that Defendants may have waived their current claims that the OBOA and/or fraudulent inducement invalidate the Franchise Agreement but chooses to address those claims on the merits nonetheless.

alleges, the OBOA does not apply here, and—even if it did—RFS complied with its requirements.

The OBOA is intended "to protect prospective purchasers of business opportunity plans by requiring that sellers provide the purchasers with the information necessary to make an intelligent decision about the business opportunity plan being offered." Ohio Rev. Code § 1334.15(A). However, "Except for division (H) of section 1334.03 and section 1334.04[3] of the Ohio Revised Code," the OBOA does "not apply to: (A) Any transaction that complies in all material respects with the trade regulation rule of the federal trade commission, 'disclosure requirements and prohibitions concerning franchising,' 16 C.F.R 436.1 *et seq.*, as may be amended from time to time, that is in effect on the date of the transaction." Ohio Rev. Code § 1334.13.

Defendants contend that this exemption from the OBOA does not apply here because RFS: "(1) falsely claimed that it did not make financial performance representations; and (2) made financial performance representations regarding actual sales and profits outside the FDD [Franchise Disclosure Document] and without the required disclaimers." (Doc. 48 at PageID 1347.) Pursuant to the Federal Trade Commission's Franchise Rule, if a franchisor declines to make financial performance representations in Item 19 of its FDD, then it is not permitted to provide information about the actual or potential financial performance of its franchise outlets. *See* 16 C.F.R. § 436.5(s). The Franchise Rule defines "financial performance representation" as "any representation, including any oral, written, or visual representation, to a **prospective**

---

[3] These provisions prohibit a seller from representing that a purchaser's initial payment is secured or that the seller provides a buy-back arrangement unless the seller has obtained a surety bond or established a trust account as outlined in Ohio Revised Code § 1334.04. There is no allegation that Plaintiff violated these prohibitions.

6

franchisee . . . that states, expressly or by implication, a specific level or range of actual or potential sales, income, gross profits, or net profits." 16 C.F.R. § 436.1(e) (emphasis added).

Defendants allege that Tim Haines—RFS' President and CEO—admitted showing the Gilmans "profit and loss statements as it related to the job." (Doc. 48 at 1347.) However, these statements were not shown to the Gilmans until their "training week" in Cincinnati which occurred AFTER they had become franchisees. (Hrg. Transcript, Doc. 43 at PageID 1172; Ch. Gilman Dep., Doc. 24 at PageID 922.) Because they were no longer "prospective franchisees" when Haines showed them the profit and loss statements, showing them the statements did not violate the Franchise Rule. *See* 16 C.F.R. §§ 436.1(e) and 436.5(s). As the evidence in the record demonstrates that RFS complied with the FTC's regulations regarding disclosure requirements and prohibitions, RFS is exempt from the OBOA. *See* Ohio Rev. Code § 1334.13. Accordingly, Defendants' contention that the OBOA renders the Franchise Agreement unenforceable is without merit.

**B. Defendants' Claim that They Were Fraudulently Induced to Enter into the Franchise Agreement Rendering the Agreement Unenforceable**

Defendants next contend that the Franchise Agreement is unenforceable because they were fraudulently induced to sign it. It is well established that:

> [T]he elements of fraudulent inducement are: (1) an actual or implied false representation concerning a fact, or where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction; (3) knowledge of the falsity of the representation or such recklessness or utter disregard for its truthfulness that knowledge may be inferred; (4) intent to induce reliance on the representation; (5) justifiable reliance; and (6) injury proximately caused by the reliance.

*Simon Property Group, L.P. v. Kill*, No. 1-09-30, 2010–Ohio–1492, ¶ 17 (Ohio App. 2010). "[A] claim of fraud in the inducement arises when a party is induced to enter into an agreement

through fraud or misrepresentation . . . A classic claim of fraudulent inducement asserts that a misrepresentation of facts outside the [agreement] or other wrongful conduct induced a party to enter into the [agreement]." *Aero Fulfillment Serv. Corp. v. Oracle Corp.*, 186 F. Supp. 3d 764, 775 (S.D. Ohio 2016) (quoting *Am. Coal Sales Co. v. N.S. Power Inc.*, No. 2:06cv94, 2009 WL 467576 (S.D. Ohio Feb. 23, 2009)).

In the case at bar, Defendants identify as "fraudulent" only statements made during "training week." (Doc. 48 at PageID 1349–50.) However, "training week" did not occur until AFTER the contract had been signed. (Hrg. Transcript, Doc. 43 at PageID 1172; Ch. Gilman Dep., Doc. 24 at PageID 922.) Because the Defendants did not know about the allegedly false statements when they entered into the Franchise Agreement, those statements could not have fraudulently induced them to enter the agreement. Accordingly, Defendants' contention that they were fraudulently induced to enter into the Franchise Agreement fails.

**C. Defendants' Claim that RFS's Own Material Breaches of the Contract Preclude Enforcement**

In their Objections to the Magistrate Judge's Report and Recommendation, Defendants contend both that the Magistrate Judge failed to consider evidence that RFS breached the Franchise Agreement first and that Defendants "are prepared to present additional evidence of FRS's material breaches of the Franchise Agreement." (Doc. 48 at PageID 1353.) The Magistrate Judge conducted a two-day evidentiary hearing on the Motion for Preliminary Injunction, and she invited both parties to present any evidence they desired. (Doc. 46 at PageID 1319.) If Defendants possess more convincing evidence that they chose not to present at the evidentiary hearing for some reason, they may not then fault the Magistrate Judge for failing to consider such evidence. On the state of the record as it currently exists, the Court finds no error in the Magistrate Judge's Report and Recommendation.

### D. Defendants Request a Bond

Where a preliminary injunction is issued, a Court may require that the movant provide a bond in an amount "proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, the Court has no mandatory duty to impose a bond in such circumstances. *Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins. Co.*, 714 F.3d 424, 431 (6th Cir. 2013). The Franchise Agreement at issue in this case specifically provides, "Franchisor will be entitled, **without bond**, to the entry of temporary and permanent injunctions and orders of specific performance enforcing the provisions of this Agreement . . . ." (Doc. 6 at PageID 204 (emphasis added).) Under these circumstances, the Court sees no need to require a bond at this juncture.

### IV. CONCLUSION

Accordingly, the Magistrate Judge's Report and Recommendation (Doc. 33) is hereby adopted as the opinion of this Court. Plaintiff's Motion for Preliminary Injunction (Doc. 7) is hereby **GRANTED**. Defendants' Objections (Doc. 48) are hereby overruled.

**IT IS SO ORDERED**.

Dated: January 25, 2019  S/Susan J. Dlott_____
                         Judge Susan J. Dlott
                         United States District Court